**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID MAURICE LYONS-BEY,

      Petitioner,

    v.

SHERMAN CAMPBELL,

      Respondent,

_____/

Case No. 5:16-CV-13797
HON. JOHN CORBETT O'MEARA
UNITED STATES DISTRICT COURT

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS, DENYING THE MOTION FOR AN EVIDENTIARY HEARING,
DENYING THE MOTION FOR RECONSIDERATION, DECLINING TO ISSUE
A CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL
*IN FORMA PAUPERIS***

David Maurice Lyons-Bey, ("petitioner"), filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his convictions for assault with intent to do

great bodily harm less than murder, conspiracy to commit assault with intent to do great

bodily harm less than murder, armed robbery, and conspiracy to commit armed robbery.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the

Macomb County Circuit Court, in which he was jointly tried with co-defendant Damien

Banks. Petitioner was acquitted of charges of assault with intent to commit murder and

conspiracy to commit first-degree murder. This Court recites verbatim the relevant facts

relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Brad Bohen lived down the street from Tiffany Greathouse. After meeting in the neighborhood, Bohen became friends with Greathouse's brother, Maliki Greathouse, and her boyfriend, defendant Banks. On the day in question, Bohen testified that Banks and Maliki were visiting his home when he took a phone call from his attorney. Bohen told his attorney that he had gathered sufficient money to pay a $650 retainer plus additional fees and that he wished to procure his services. When Banks and Maliki heard this conversation, they allegedly looked at each other and left.

Later that day, Bohen left his home with approximately $2,500 in cash in his pocket. He travelled with his friend Renee Nomer and her two children to Costco and then to T.G.I. Friday's for dinner. While inside the restaurant, Bohen fielded two phone calls from Banks. Bohen alleged that Banks wanted him to purchase some Xanax and Adderall from him. Bohen told Banks that he could meet him at the restaurant. Banks called once and claimed to be outside the restaurant. Bohen could not find him in the parking lot and returned to his table. Bohen testified that Banks called again and claimed to be waiting outside. When Bohen exited the restaurant, he saw Greathouse sitting inside a vehicle in the parking lot. Bohen asserted that Greathouse pointed toward the back of the restaurant.

Bohen walked toward the back parking lot and saw Banks and Lyons standing near the dumpster. Lyons is the boyfriend of Greathouse's mother and Bohen had not met him before the attack. As Bohen approached the men, someone struck him from behind in the head and he fell to the ground. Banks and Lyons ran toward him, and Bohen initially believed they were coming to assist him. However, Banks and Lyons joined the fray, keeping him on the ground, and hitting and kicking him. A young female employee of the restaurant came out at the end of her shift and saw two tall, thin black men wearing hooded jackets beating a white man who was curled on the ground in fetal position. One man was using a "small, blunt object" that "looked like a hammer" to beat the victim in the head. She saw a third man standing watch. She yelled and the men ran away, with one man dropping something out of his pocket along the way. At the end of this encounter, Bohen had only $661 remaining in his pockets.

Bohen was hospitalized for five days and required surgery to remove a shard of his skull from his brain. Investigating officers brought photographic lineups to the hospital for Bohen's review. The first included black and white photographs and Bohen was unable to identify his attackers. In the second lineup, Bohen identified Banks. In a third, Bohen selected Lyons from the array.

Following a joint trial before a single jury and several days of jury deliberations, the jury acquitted the defendants of the greatest charged offenses and convicted them of assault with intent to commit great bodily harm, armed robbery, and conspiracy to commit those offenses. These consolidated appeals followed.

*People v. Lyons*, No. 319252, 2015 WL 6438128, at *1–2 (Mich. Ct. App. Oct. 22, 2015).

The Michigan Court of Appeals affirmed petitioner's conviction. *Id.*

The Michigan Supreme Court denied petitioner leave to appeal because it was "not persuaded that the question presented should be reviewed by" it. *People v. Lyons*, 499 Mich. 958, 879 N.W.2d 871 (Mich. 2016). The court also remanded to the trial court on a sentencing issue that is not being raised by petitioner in his current petition. *Id.*

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner is entitled to a new trial where he was denied effective assistance of trial counsel, where trial counsel failed to file a notice of alibi and trial counsel concurred in the instructions as given, which did not include an instruction on the lack of presence (alibi).

II. Petitioner is entitled to a new trial where the trial court erred in its denial of the admission of evidence of a [sic] videotape of the offense.

III. Petitioner was deprived of his Fifth and Fourteenth Amendment rights of due process when the court denied his motion for a direct verdict of acquittal. His convictions violates both state and federal constitutional rights to be free from conviction on the absence of proof beyond a reasonable doubt.

IV. Where the officer-in-charge testify's [sic] that he possessed no information, knowledge or belief that Petitioner has committed (2) armed robberies against Bradley Bohen; the officer is shown to have filed a false police report and committed fraud upon the court, and the court has not acquired jurisdiction to try the (2) armed robbery charges, absent a showing of probable cause existed to arrest Petitioner at the time the request for a warrant was made.

V. The trial court erred in giving lesser-included jury instructions, where Petitioner's sole defense is alibi; and where the jury instruction has effectively amended the felony information, violating Petitioner's rights to notice of the charge and statutory right to be provided a preliminary examination on the lesser-included charge.

VI. Petitioner was denied a fair trial, where the prosecutor suborned perjured testimony; and where the TGI Friday's security video footage exonerates and confirms Petitioner's non-presence on the scene of these crimes when they occurred; Petitioner is entitled to an evidentiary hearing and bond pending appeal.

VII. Petitioner was denied his constitutional right to directly appeal his state criminal conviction, where his substitute appellate counsel failed to file an appellate's [sic] brief on appeal within (56) days after receiving the last transcripts in Petitioner's case; and Petitioner should be remanded to state court for a new appeal and bond pending appeal.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

**A. Claim # 1. The ineffective assistance of trial counsel claims.**

Petitioner first argues he was denied the effective assistance of trial counsel.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's

allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

Petitioner first contends that trial counsel was ineffective for failing to investigate or call alibi witnesses. Petitioner further claims that trial counsel was ineffective for failing to file an alibi notice. Petitioner also argues that trial counsel was ineffective for failing to request an instruction on alibi.

Petitioner's first appellate counsel raised this claim in his appellate brief. Petitioner separately raised this claim in a *pro per* motion to remand which he filed with the Michigan Court of Appeals. The Michigan Court of Appeals denied the motion to remand. *People v. Lyons*,No. 319252 (Mich. Ct. App. Oct. 22, 2014); *reconsideration den*. No. 319252 (Mich. Ct. App. Nov. 26, 2014).

The Michigan Court of Appeals rejected petitioner's claim:

Defense counsel did not file a notice of alibi defense as required by MCL 768.20(1). However, defendant took the stand, against counsel's advice, and testified that he was in Detroit visiting a friend and then his sister at the time of the Macomb County offense. In closing argument, counsel did not discuss defendant's alibi defense, focusing instead on the disparity between the description of the offenders and Lyons, and Bohen's memory deficits caused by two earlier accidents. Counsel further emphasized the changes in Bohen's story over time. Subsequently, counsel did not request that an alibi instruction be read to the jury. However, defense counsel's actions did not amount to ineffective assistance.

Decisions regarding what defenses to present are pure trial strategy. Here, counsel chose to focus on the complainant's credibility and the differences between Lyons's actual appearance and the description given by the T.G.I. Friday's employee who interrupted the attack. Presenting alibi evidence would not have been inconsistent with this approach. However, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are [also] presumed to be matters of trial strategy." We may not second guess

counsel's decision to focus on one defense over the other.

We further note that Lyons has not presented affidavits from those witnesses he claims could have supported his alibi defense. Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. Absent affidavits supporting the viability of his proffered defense, however, we are unable to determine that counsel unreasonably declined to present an alibi defense to the jury. We also cannot ascertain from the record that counsel failed to investigate this theory. It is equally possible that counsel interviewed the witnesses and decided not to call them to the stand based on credibility issues or because they did not provide accounts consistent with Lyons's version of events. The burden is on defendant to establish the factual predicate for his claim, which he has not done.

*People v. Lyons*, 2015 WL 6438128, at * 3 (internal citations and quotations omitted).

Petitioner is not entitled to habeas relief for several reasons.

First, counsel's decision to forego presenting alibi witnesses and instead attempt to discredit the identification testimony of the victim is a reasonable decision that defeats petitioner's claim. Defense counsel's failure to call alibi witnesses to testify at petitioner's trial was a matter of reasonable trial strategy, and thus did not constitute ineffective assistance of counsel, where counsel instead chose to rely on discrediting the victim by challenging the strength of his identification of petitioner as his assailant. *See Hale v. Davis*, 512 F. App'x. 516, 521-22 (6th Cir. 2013). Indeed, "[T]o support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates.

All that happened here is that counsel pursued a course that conformed to the first option

... In light of the record here there was no basis to rule that the state court's

determination was unreasonable." *Id.* (quoting *Richter*, 131 S. Ct. at 790)).

Petitioner's counsel may also have made the strategic choice not to present an

alibi defense because petitioner had made a statement to the police in which he admitted

to being present at the crime scene. (Tr. Vol. 5, pp. 13-25). [1]  Because petitioner's own

statement to the police refuted an alibi, petitioner was not prejudiced by counsel's failure

to more thoroughly pursue such a defense. *See e.g. Taylor v. Abramajtys*, 20 F. App'x.

362, 364 (6th Cir. 2001)(to render effective assistance of counsel, counsel was not

required to give notice of alibi defense when defendant's own statement to police refuted

any alibi).

Petitioner is also not entitled to relief on his claim because he failed to provide

either to the Michigan courts or to this Court affidavits from any of his proposed alibi

witnesses concerning their proposed testimony and willingness to testify on the

petitioner's behalf.  Conclusory allegations of ineffective assistance of counsel, without

any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,*

178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts

in support of his ineffective assistance of claim, petitioner is not entitled to an

evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See*

---

[1]  See Dkt. # 1-3, Pg ID 330-333.

*Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

Petitioner failed to attach any offer of proof or any affidavits sworn by the proposed

witnesses. Petitioner offered, neither to the Michigan courts nor to this Court, any

evidence beyond his own assertions as to whether the witnesses would have been able to

testify and what the content of these witnesses' testimony would have been. In the

absence of such proof, petitioner is unable to establish that he was prejudiced by

counsel's failure to call these witnesses to testify at trial, so as to support the second

prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551,

557 (6th Cir. 2007).

Petitioner argues that he does not need to provide affidavits from these witnesses

to establish his ineffective assistance of counsel claim. In support of his argument,

petitioner cites to the case *Clinkscale v. Carter,* 375 F.3d 430, 444 (6th Cir. 2004), in

which a majority of the panel in that case suggested that an affidavit from a proposed

alibi witness is unnecessary to establish an ineffective assistance of counsel claim.

Petitioner's case is distinguishable from the petitioner's case in *Clinkscale* in

several respects.

First, the Sixth Circuit in *Clinkscale* reviewed the petitioner's claim *de novo*

because there had been no adjudication on the merits by the state courts. *Clinkscale v.*

*Carter*, 375 F.3d at 436. Because this was a *de novo* standard of review, the Sixth

Circuit was willing to consider both the evidence presented in the state courts as well as

newly submitted evidence. *Id.*

By contrast, petitioner's ineffective assistance of trial counsel claim was adjudicated on the merits both by the Michigan Court of Appeals in their opinion and order affirming the conviction as well as in their order denying the motion to remand. The denial of petitioner's motion to remand by the Michigan Court of Appeals would in itself be considered an adjudication on the merits, for purposes of the AEDPA's deferential standard of review. *See Nali v. Phillips,* 681 F. 3d 837, 852 (6th Cir. 2012). The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* would preclude the Court from considering any new evidence that petitioner would even want to present at this point in support of his claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d 578, 590, n.3 (6th Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).

Moreover, although the majority of the panel in *Clinkscale* suggested that they could find no legal authority that held that a habeas petitioner must present an affidavit in support of an ineffective assistance of counsel claim, they also noted that an affidavit from the proposed alibi witness had nonetheless been filed in the state courts in support of the petitioner's case. *Clinkscale v. Carter*, 375 F.3d at 444; See also *Id.* at 447 (D.J. McKeague, sitting by designation, concurring in part & dissenting in part)("In holding that petitioner had not shown prejudice [from trial counsel's failure to call alibi witnesses], the district court noted that petitioner had offered no proof of the nature of

his putative alibi witnesses' testimony or even that they would in fact have been available and willing to so testify. The majority correctly points out that the district court erroneously ignored the affidavit of one of the alibi witnesses, petitioner's father."). By contrast, petitioner in this case failed to present any affidavits of the proposed alibi witnesses to either the state courts or to this Court.

Finally, Sixth Circuit precedent thus does not constitute "clearly established Federal law, as determined by the Supreme Court" and thus "cannot form the basis for habeas relief under [the] AEDPA." *Parker v. Matthews,* 567 U.S. 37, 48–49 (2012). This Court cannot rely on *Clinkscale* as a basis for granting petitioner habeas relief. *See* e.g. *Marion v. Woods*, 663 F. App'x. 378, 383 (6th Cir. 2016), *cert. denied sub nom. Marion v. Jackson*, 137 S. Ct. 2291 (2017).

Finally, petitioner did present an alibi defense through his own testimony. Where a defendant is allowed to present alibi testimony, the failure of counsel to give timely notice of an alibi defense does not result in denial of effective assistance of counsel. *See e.g. Cox v. Cardwell*, 464 F.2d 639, 640-44 (6th Cir. 1972).

Petitioner also contends that trial counsel was ineffective for failing to request an alibi instruction. Given the "tenuous nature" of petitioner's alibi defense, counsel was not ineffective in failing to request such an instruction. See *Freeman v. Jago*, 1987 WL 24110, * 2, 835 F.2d 878 (6th Cir. Dec. 1, 1987)(Table).

Petitioner also claims that his trial counsel was ineffective for failing to investigate the destruction of exculpatory evidence which he claims was on his two cell

phones that had been seized by the police.

Petitioner presented no evidence to support his claim that his cell phones contained exculpatory information. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006); *Workman v. Bell*, 160 F.3d at 287 (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). Petitioner's claim is conclusory and unsupported. Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The right to present a defense claim.**

Petitioner next claims that the judge violated his right to present a defense when she refused to allow the parties to admit into evidence the surveillance videotape from the T.G.I. Friday's restaurant where the assault took place, because no foundation had been established for the admission of the copy of the videotape, as per the authentication requirement of M.R.E. 901. The prosecutor had sought to admit the videotape into evidence but the co-defendant's counsel objected to its admission. All three parties, including petitioner's counsel, ultimately stipulated to the admission of several still photographs of the videotape. *People v. Lyons*, 2015 WL 6438128, at * 4.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v.*

14

*Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in 28 U.S.C. § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect; a petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme

Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner is not entitled to relief on his claim for three reasons.

First, the judge indicated that she did not want to admit this videotape into evidence because there was an improper foundation to establish its authenticity. M.R.E. 901(a) requires that for a document to be admissible into evidence, the party seeking its admission must authenticate it with sufficient evidence to "support a finding that the document is what the proponent claims it to be." *People v. Howard*, 226 Mich. App 528, 553; 575 N.W. 2d 16 (1997). The trial judge excluded the surveillance videotape from evidence because it could not be authenticated. "The authentication requirement serves 'legitimate interests in the criminal trial process,' and is neither arbitrary nor disproportionate." *U.S. v. Almonte*, 956 F. 2d 27, 30 (2nd. Cir. 1992)(citing *Rock*, 483 U.S. at 55-56). Therefore, the trial judge's decision to exclude the videotape on the ground that it could not be authenticated did not violate petitioner's constitutional right to present a defense. *Id.*

Secondly, although petitioner's counsel initially indicated that he had no objection to the admission of the videotape, he ultimately agreed to stipulate with the prosecutor and co-defendant's counsel that only some still photographs from the videotape should be admitted. Petitioner cannot convert a tactical decision not to introduce evidence into a constitutional violation of the right to present evidence generally. *See Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1150 (D. Colo. 1999).

Third, petitioner failed to show that the surveillance videotape contained

16

information that would exculpate him.  Petitioner argues that the videotape is exculpatory because the detective and several other witnesses who viewed the videotape indicated that they could not identify anyone's facial features from the videotape. Petitioner claims that the videotape could have thus been used to impeach the victim's testimony that he could identify petitioner from the T.G.I. F.'s surveillance video and thus in general call into question the victim's identification of him as one of his assailants.  Petitioner ignores the fact that the victim testified that he saw his assailants, identified them at lineups and later in court based on having actually seen them when they were attacking him.  On cross-examination, the victim testified, "I think they were identified before I saw the video." (Tr. Vol. 3, p. 129).   Regarding watching the video, the victim testified: "It was no question if it was them.  At the time I already know it was them. I'm pretty sure I think I saw them—already picked them out of a photo line-up at that point in time and I already knew that it was them.  And then I just watched the video for—I'm not even really sure why I watched that video." (*Id.*, pp. 129–30). [2]  There is nothing to indicate that the victim based his identification of petitioner at all on the videotape, thus whether or not persons could be identifiable on the videotape would not have been exculpatory.  Petitioner would not be entitled to habeas relief on a right to present a defense claim that is merely speculative. *See e.g. Berry v. Palmer*, 518 F. App'x. 336, 342 (6th Cir. 2013).  Petitioner is not entitled to relief on his second claim.

---

[2]  See Dkt. # 1-2, Pg ID 288.

**C. Claim # 3. The sufficiency of evidence claim.**

Petitioner next claims that there was insufficient evidence to convict.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must

nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner initially claims that there was insufficient evidence to submit the original charges of assault with intent to commit murder and conspiracy to commit first-degree murder to the jury. Petitioner was acquitted of these charges and found guilty only of the lesser offenses of assault with intent to do great bodily harm less than murder and conspiracy to commit assault with intent to do great bodily harm less than murder.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis original)*; See also Aldrich v. Bock,* 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004). The submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F. 3d 760, 765, fn. 4 (6th Cir. 1996); *Long,* 450 F. Supp. 2d at 752; *Aldrich,* 327 F. Supp. 2d at 761; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001); *But see Williams v.*

*Jones*, 231 F. Supp. 2d 586, 593-94 (E.D.Mich. 2002)(finding this claim cognizable). In light of the fact that petitioner was acquitted of the assault with intent to commit murder and conspiracy to commit first-degree murder charges, any error in submitting the original charges to the jury would not entitle petitioner to habeas relief. *See King v. Trippett*, 27 F. App'x. 506, 510 (6th Cir. 2001)(Petitioner who alleged that the trial court improperly refused to enter a directed verdict on his armed robbery charge, even though the jury subsequently acquitted him on that charge, failed to state a claim sufficient for habeas corpus relief).

Petitioner next contends that there was no evidence to establish his identity as one of the victim's assailants.

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich.App. 646, 181 N.W.2d 655, 656 (1970)).

In the present case, the victim positively identified petitioner at trial as one of his assailants. The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F. 2d 1142, 1144 (6th Cir. 1985)(internal citations omitted). In the present case, the victim unequivocally identified petitioner at trial as being one of the persons who robbed and assaulted him. This evidence was sufficient to support petitioner's convictions. *See Brown v. Burt,* 65 F. App'x. 939, 944 (6th Cir. 2003).

Petitioner further contends that there was insufficient evidence to establish his guilt to the armed robbery, conspiracy to commit armed robbery, and conspiracy to commit assault with intent to do great bodily harm charges.

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. *See O'Guin v. Foltz,* 715 F. 2d 397, 400 (6th Cir. 1983).

Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. *See Lovely v. Jackson,* 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004)(citing *People v. Mitchell,* 149 Mich. App. 36, 38, 385 N.W. 2d 717 (1986)).

Under Michigan law, a conspiracy is defined as "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004)(*quoting People v. Carter*, 415 Mich. 558, 567; 330 N.W.2d 314 (1982)). "[A] two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568. Direct proof of an agreement is not required, nor is proof of a formal agreement necessary. Rather, it is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Cotton*, 191 Mich. App. 377, 393; 478 N. W. 2d 681 (1991). A conspiracy may be proven by

circumstantial evidence or may be based on inference. *Id.*

The Michigan Court of Appeals reasonably rejected the claim. *See People v. Lyons*, 2015 WL 6438128, at * 5. The victim testified he had $2,500 in his pockets when he left his home and went to the restaurant. The victim was assaulted by three persons, one whom he identified as petitioner. One person hit the victim from behind while the other two men kept the victim on the ground while hitting him with a blunt object and kicking him. After the attack, the victim had only $ 661 remaining in his pocket and had not spent much money shopping. The co-defendant and Maliki knew that the victim had a large amount of money because they heard him speaking on the phone with his attorney earlier that day. The jurors could infer from the victim's testimony that he had less money remaining after the robbery that money had been taken from him during the assault, so as to support the robbery and conspiracy to commit robbery convictions.

The jurors could also infer that petitioner conspired with the other men to rob and assault the victim. Banks and Maliki heard the victim tell his lawyer on the phone that he had a large sum of cash. The victim testified that the two men looked at each other suspiciously and left. Later that day, Banks telephoned the victim several times to arrange a meeting. Some of these calls were determined to have come from a cell phone registered to petitioner. When the victim came outside of the restaurant to meet Banks as arranged, three individuals, including petitioner, were there. Banks made a signal before someone hit him from behind. The victim testified that Banks and petitioner then joined

in the attack to incapacitate him. In light of the foregoing, the Michigan Court of Appeals' determination that there was sufficient evidence to support petitioner's convictions for conspiracy to commit armed robbery and conspiracy to assault with intent to commit great bodily harm was not an unreasonable application of clearly established federal law, so as to entitle petitioner to habeas relief. *See Bradley v. Birkett*, 192 F. App'x. 468, 480-81 (6th Cir. 2006).

### D. Claim # 4. The jurisdiction/arrest warrant claim.

Petitioner next contends that the state court lacked jurisdiction over his case because there was no probable cause to issue the arrest warrant in this case.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler,* 532 F. 2d 1058, 1059 (6th Cir. 1976); *See also Daniel v. McQuiggin,* 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009). The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x. 473, 475 (6th Cir. 2001). Petitioner's claim that the trial court lacked jurisdiction to try his case raises an issue of state law, because it questions the interpretation of Michigan law, and is therefore not cognizable in federal habeas review. *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill.,* 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis,* 23 F. App'x. 259, 266 (6th Cir. 2001)(district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct

jury on the requirements for extraterritorial jurisdiction, because the claim was

contingent upon an interpretation of an alleged violation of state law).

In addition, any Fourth Amendment claim is non-cognizable on habeas review. A

federal habeas review of a petitioner's arrest or search by state police is barred where the

state has provided a full and fair opportunity to litigate an illegal arrest or a search and

seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213

F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must

have provided, in the abstract, a mechanism by which the petitioner could raise the

claim, and presentation of the claim must not have been frustrated by a failure of that

mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is

whether a habeas petitioner had an opportunity to litigate his or her claims, not whether

he or she did or even whether the Fourth Amendment claim was correctly decided. *See*

*Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606

F.3d 867 (6th Cir. 2010).

Petitioner did not raise his Fourth Amendment claim at the trial level but did raise

it in his *pro se* Standard 4 Brief on Appeal. [3]

The opportunity to litigate, for purposes of *Stone v. Powell,* encompasses more

than an evidentiary hearing in the trial court. It also includes the ability to raise the

---

[3] See Dkt. # 27-3, Pg ID 2032-35. Standard 4 of Administrative Order 2004-6,
471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days
of the filing of the brief by the appellant's counsel, and may be filed with accompanying
motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

Fourth Amendment claim on direct appeal of the conviction. See *Rashad v. Lafler,* 675

F. 3d 564, 570 (6th Cir. 2012)(petitioner had ample opportunities in state court to present

his Fourth Amendment claims, thus precluding federal habeas relief based on the state

court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth

Amendment claims on forfeiture grounds because his attorney did not show up at a

hearing designed to consider them, and a state appellate court rejected his claims on the

merits); *Lovely v. Jackson*, 337 F. Supp. 2d at 976 (petitioner's Fourth Amendment claim

was not cognizable on habeas review, even though the petitioner did not challenge the

legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial

motion and then on direct appeal and was denied relief). Because all of the material

facts were before the state appellate courts on direct review and the appellate process

was not otherwise deficient, petitioner had a full and fair opportunity to litigate his

Fourth Amendment claim and is thus not entitled to relief.

### 5. Claim # 5. The instruction claim.

Petitioner next alleges that the judge erred in instructing the jury on the lesser

included offenses of assault with intent to do great bodily harm less than murder and

conspiracy to commit assault with intent to do great bodily harm less than murder,

because petitioner denied committing the charged offenses.

The burden of demonstrating that an erroneous instruction was so prejudicial that

it will support a collateral attack upon the constitutional validity of a state court

conviction is even greater than the showing required in a direct appeal. The question in

such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

Although a defendant's due process rights may be violated if a jury is instructed on an offense not included in the information or the indictment and the defendant did not have notice that he might be charged with that offense, an instruction on a lesser included offense may be given even over the defendant's objection, because a defendant has sufficient notice when charged with the greater offense that he may also have to defend against the lesser included offense. *See Seymour v. Walker,* 224 F. 3d 542, 558 (6th Cir. 2000)(collecting cases).

The Michigan Court of Appeals concluded that it was not improper to instruct the jury on assault with intent to do great bodily harm because this is a lesser included offense of the original assault with intent to commit murder charge. *People v. Lyons*, 2015 WL 6438128, at * 6.  Because assault with intent to do great bodily harm is a

necessarily lesser included offense of assault with intent to commit murder, the trial court did not violate petitioner's due process rights by instructing the jury on assault with intent to do great bodily harm as a lesser included offense. *Seymour,* 224 F. 3d at 558.

The Michigan Court of Appeals concluded that it was "technically improper" to instruct the jurors on conspiracy to commit great bodily harm less than murder as a lesser included offense of conspiracy to commit first-degree murder, because the former offense was not a necessarily included offense of the latter offense, but found that the error had been waived by counsel. *People v. Lyons*, 2015 WL 6438128, at * 6.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996)(citing *Olano*, 507 U.S. at 733-34). *See also Shahideh v. McKee*, 488 F. App'x. 963, 965 (6th Cir. 2012)("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). The Michigan Court of Appeals concluded that petitioner's counsel had waived the issue by expressly agreeing that the judge instruct the jurors on conspiracy to do great bodily harm less than murder as a lesser offense to the conspiracy to commit murder charge. A defendant in a criminal case cannot complain of error which he himself has invited. *Shields v. United States*, 273 U.S. 583, 586 (1927). When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields*

*v. Bagley,* 275 F. 3d 478, 486 (6th Cir. 2001). Petitioner is not entitled to relief on this portion of his claim.

### F. Claim # 6. The perjury claim.

Petitioner next claims that the victim committed perjury when he testified that he was able to identify petitioner as one of his assailants from the T.G.I. Friday's surveillance video, because a detective and the district court judge at the preliminary examination both indicated after watching the surveillance video that they did not believe that anyone could be recognized in the videotape.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Petitioner is not entitled to relief for several reasons.

First, petitioner failed to show that the victim testified deliberately falsely on this issue. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). Petitioner presented no evidence that the victim intentionally testified falsely about being able to recognize petitioner from the surveillance videotape. The victim's testimony that he could recognize petitioner from the videotape was basically a matter of his perception. "An allegation of perjury as to a 'matter of perception' fails absent 'conclusive proof' that the witness testified falsely as to his belief." *U.S. v. Robinson-Gordon*, 418 F. App'x. 173, 177 (4th Cir. 2011)(citing *United States v. Derrick*, 163 F. 3d 799, 828 (4th Cir. 1998)).

Secondly, assuming that the victim testified falsely about his ability to identify petitioner from the videotape, petitioner is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that the victim testified falsely on this matter. *See Rosencrantz v. Lafler*, 568 F. 3d 577, 587 (6th Cir. 2009).

Finally, the victim testified that he knew petitioner and the co-defendant, had identified them at line-ups, and again at trial. The victim testified that he identified petitioner and the co-defendant prior to viewing the videotape. (Tr. Vol. 3, pp. 129-30). Because the victim had already identified petitioner prior to viewing the surveillance videotape, his testimony about identifying petitioner from watching the videotape was not material to petitioner's conviction, because it was not a "crucial link" in the case against petitioner. *See e.g. Foley v. Parker,* 488 F.3d 377, 392 (6th Cir. 2007); *See also*

29

*Rosencrantz v. Lafler,* 568 F.3d at 588 (prosecutor's failure to correct victim's material testimony that she had not met with prosecutors prior to her testimony at defendant's trial for sexual assault was "harmless error"; uncorrected testimony would likely fail to substantially influence jury's verdict given victim's uncontradicted testimony about assailant's tattoo). Petitioner is not entitled to relief on his sixth claim.

### G. Claim # 7. The ineffective assistance of appellate counsel claim.

Petitioner lastly contends that he was denied the effective assistance of appellate counsel.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel both on an appeal of right. *See Evitts v. Lucey,* 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner initially claims that his first appellate attorney was ineffective for failing to move for a *Ginther* [4] hearing in the trial court on his ineffective assistance of trial counsel claim involving trial counsel's failure to present an alibi defense.

Petitioner is not entitled to habeas relief on this claim for several reasons. First, appellate counsel's decision to raise the ineffective assistance of trial counsel claim without conducting an evidentiary hearing was a "reasonable recognition that the

---

[4] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the [appellate] court to make a fair determination of the sixth amendment issue." *Young v. Miller,* 883 F. 2d 1276, 1280 (6th Cir. 1989).

Moreover, assuming that appellate counsel was ineffective for failing to proceed with a *Ginther* hearing, petitioner was not prejudiced by appellate counsel's failure to do so because petitioner failed to show that the underlying ineffective assistance of trial counsel claim had merit. In light of the fact that petitioner's ineffective assistance of trial counsel claim is without merit, petitioner is unable to establish that he was prejudiced by appellate counsel's failure to conduct a *Ginther* hearing. *See e.g. Davis v. Booker,* 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); *rev'd on other grds,* 589 F. 3d 302 (6th Cir. 2009).

Finally, petitioner was able to raise his ineffective assistance of trial counsel claim and his request for a *Ginther* hearing in his *pro per* supplemental brief and motion to remand. Because the Michigan Court of Appeals considered, and rejected the claims raised by petitioner in his supplemental *pro per* brief, petitioner is unable to show that he was prejudiced by appellate counsel's failure to request a *Ginther* hearing in the appeal brief filed by counsel. *See Donaldson v. Booker,* 505 F. App'x. 488, 496 (6th Cir. 2012).

Petitioner next claims that he was denied the assistance of appellate counsel when his second appellate attorney, appointed after petitioner's first appellate attorney had been permitted to withdraw as appellate counsel, failed to file a supplemental brief

within the time limits for filing an appellate brief, which caused the brief to be rejected as untimely.

Petitioner's claim is without merit. The Michigan Court of Appeals did not reject the supplemental brief because it was untimely but because petitioner's first appellate counsel had already submitted a brief. Under M.C.R. 7.212(G), once an appellate brief has been submitted in a case, as was the case in petitioner's appeal, no additional briefs can be filed except by leave of the court. Petitioner's second appellate counsel did attempt to file a supplemental brief, but the Michigan Court of Appeals refused to accept it for filing, not because it was untimely, but because a brief had already been filed. [5] Because petitioner's second appellate counsel did attempt to file a supplemental brief in this case, petitioner is not entitled to habeas relief.

### H. The motions for an evidentiary hearing and for reconsideration are DENIED.

Petitioner has filed a motion for an evidentiary hearing and a motion for reconsideration of this Court's order from January 24, 2018 denying his motions to expedite, for summary judgment, for an evidentiary hearing, for discovery, for oral argument, and for release on bond.

The Court will deny plaintiff's motion for reconsideration. U.S. Dist.Ct. Rules, E.D. Mich. 7.1 (h) allows a party to file a motion for reconsideration. However, a

---

[5] See Letter from Bradley Hall, Administrator of the Michigan Appellate Assigned Counsel System to Petitioner, Petitioner's Appendix S, Dkt. # 23-3, Pg ID 1689-90.

motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. *Ford Motor Co. v. Greatdomains.com, Inc.,* 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001); *See also Williams v. McGinnis*, 192 F. Supp. 2d 757, 759 (E.D. Mich. 2002). A motion for reconsideration should be granted if the movant demonstrates a palpable defect by which the court and the parties have been misled and that a different disposition of the case must result from a correction thereof. *Williams,* 192 F. Supp. 2d at 759; *MCI Telecommunications Corp. v. Michigan Bell Telephone Co.,* 79 F. Supp. 2d 768, 797 (E.D. Mich. 1999). A palpable defect is a defect that is obvious, clear, unmistakable, manifest, or plain. *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997).

Petitioner's motion for reconsideration will be denied, because petitioner is merely presenting issues which were already ruled upon by this Court, either expressly or by reasonable implication, when the Court denied petitioner's previously filed motions. *See Hence v. Smith,* 49 F. Supp. 2d 547, 553 (E.D. Mich. 1999).

Petitioner has also filed a renewed motion for an evidentiary hearing. A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001). In light of the fact that petitioner's claims are devoid of merit, his motion is denied.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of

appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.[6]

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner

---

[6] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the motions for reconsideration and for an evidentiary hearing [Dkt. ## 37, 38] are **DENIED**.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*


s/John Corbett O'Meara
United States District Judge


Date:  February 14, 2018


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 14, 2018, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager